UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KYLE CARSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:12-cv-1637-WTL-DML |
| | ) |
| ALL ERECTION & CRANE RENTAL | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON MOTIONS FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant ALL Erection & Crane Rental Corporation's motion for summary judgment (dkt. no. 38) and Plaintiff Kyle Carson's motion for partial summary judgment (dkt. no. 43). The motions are fully briefed, and the Court, being duly advised, **GRANTS** ALL Erection's motion and **DENIES AS MOOT** Carson's motion, for the reasons set forth below.

## I. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court accepts as true the admissible evidence presented by the non-moving party and draws all reasonable inferences in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required

to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

On September 20, 2012, Carson was severely injured while working for his employer, White Construction, at the Wildcat Wind Farms in Elwood, Indiana. At the time, White Construction was contracted to build wind turbines at various locations throughout the farm and used large cranes to construct the massive turbines. Carson was primarily employed as a crane oiler for White Construction and regularly worked with a Manitowac 2250 Crawler Crane ("the Crane"). As a crane oiler, Carson was responsible for providing signals to the crane operator and providing general maintenance on the Crane. On the day of the incident, Carson and the crane operator, Joe Dowell, were instructed to move the Crane to a wind turbine platform several miles away from where it had last been used. Throughout the day, Carson and Dowell took turns moving the Crane across the wind farm. Eventually, the Crane approached a road with overhead power lines. Carson knew that the power lines would not be lowered for another hour and a half.

> Accordingly, Carson signaled to Dowell to stop the Crane at the base of wood matting that was being used to assist the crane in crossing the roadway. The Crane came to a stop and Carson stood on the wood matting located in front of the Crane in the slight berm up to the road's surface. Then, after having come to a complete stop, the Crane began moving forward and traveled onto the wood matting on which Carson was standing. The weight of the Crane forced the matting to rise into the air and caused Carson to slide down the created ramp and into the Crane's path. Carson's right foot was crushed by the Crane's tracks.

ALL Erection's Br. at 3. (citations omitted).[1]

After the incident, Dowell surmised that the Crane's cruise control or "detent controller" became stuck in the on position, which caused the Crane to continue moving even after he released the travel controller. A third-party inspection of the Crane confirmed such an issue with

---

[1] Carson did not dispute to ALL Erection's recitation of these facts.

2

the detent controller. Craig Scholl from Crane Sales & Service, Inc., determined that the Crane's detent controller could occasionally become engaged without being set by the operator, and that this was caused by an electrical issue with the detent controller's circuitry. A mechanic from ALL Erection repaired the detent controller after the inspection.

As a result of the incident, Carson filed suit against ALL Erection alleging negligence, and specifically, that ALL Erection "knew or should have known of the malfunction of the subject crane and failed to ensure it was in safe, proper working order prior to use by employees of White Construction," and ALL Erection "breached its duty to provide safe, properly working equipment to the employees of White Construction and to [Carson]." Compl. at ¶¶ 6-7.

ALL Erection now seeks summary judgment on Carson's claims. Conversely, Carson has moved for partial summary judgment "as to the duty owed by ALL, a duty of reasonable care when renting equipment." Carson's Resp. at 1.

Where relevant, additional facts are noted below.

### III. DISCUSSION

ALL Erection argues that it is entitled to summary judgment for three reasons:

> [It] (1) did not owe a continuing duty to inspect, maintain, and repair the Crane; (2) did not have actual or constructive knowledge that the Crane was unsafe prior to the accident; and (3) reasonably believed that Carson and/or White Construction would realize any unsafe conditions and take appropriate precautions to prevent injuries from those conditions.

ALL Erection's Br. at 10 (emphasis added). Carson argues, on the other hand that "ALL owed [him] a duty to . . . exercise reasonable care to make the crane safe for use and to exercise reasonable care to discover any dangerous condition." Carson's Resp. at 9. Carson further argues that ALL Erection breached its duty because it "did not inspect the detent controller upon delivery, nor did [it] ensure that it was done." *Id.* at 11. The Court agrees that ALL Erection

3

owed a duty to Carson. The Court also notes that a question of fact exists as to whether ALL Erection breached its duty by failing to inspect the detent controller when it delivered the Crane to White Construction. There is no evidence, however, that ALL Erection's failure to inspect the detent controller was the proximate cause of Carson's injuries.

In a negligence case, "the plaintiff must prove a: (1) duty owed to plaintiff by defendant; (2) breach of the duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury that was proximately caused by defendant's breach of duty." *Hassan v. Begley*, 836 N.E.2d 303, 307 (Ind. Ct. App. 2005) (citation omitted). In *McGlothlin v. M & U Trucking, Inc.*, 688 N.E.2d 1243 (Ind. 1997), the Indiana Supreme Court recognized that a supplier of products owes a duty of reasonable care to third-parties. Adopting Section 388 of the Restatement (Second) of Torts, the court held that:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a)  knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b)  has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c)  fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Id.* at 1245. This duty was further discussed in *Dutchmen Mfg., Inc. v. Reynolds*, 849 N.E.2d 516 (Ind. 2006), which noted that "section 388 imposes a duty on the supplier of a chattel to conduct a proper inspection which would disclose the existence of a defect." *Id.* at 522. Thus, as a

supplier,[2] and pursuant to *McGlothlin* and its progeny, ALL Erection owed a duty of reasonable care to Carson; this included a duty to perform a proper inspection of the Crane.

According to Carson, the Court's analysis should stop there and the Court should deny ALL Erection's motion for summary judgment because the "issues of breach of duty and proximate cause are for the jury." Carson's Resp. at 13. While that is generally true, the Court may rule on such issues "*in any case in which the jury may not reasonably come to a different conclusion.*" *Ashcraft v. Ne. Sullivan Cnty. Sch. Corp.*, 706 N.E.2d 1101, 1105 (Ind. Ct. App. 1999) (quoting Restatement, Second, Torts § 328 B (1965)) (emphasis in original); *see also Kroger Co v. Plonski*, 930 N.E.2d 1, 8 (Ind. 2010) ("Only where the facts are undisputed and lead to but a single inference or conclusion may the court as a matter of law determine whether a breach of duty has occurred."); *Hassan v. Begley*, 836 N.E.2d 303, 307 (Ind. Ct. App. 2005) ("Although the issue of proximate cause is often determined by the trier of fact, where it is clear that the injury was not foreseeable under the circumstances and the imposition of liability upon the original negligent actor would not be justified, the determination of proximate cause may be made as a matter of law.").

As noted above, ALL Erection was under a duty to perform a "proper inspection" of the Crane prior to making delivery to White Construction. The evidence indicates that ALL Erection delivered the Crane to White Construction in June or July, 2012. At that time, ALL Erection employee Jason Roush operated and inspected the Crane using a checklist provided by ALL Erection. He did not specifically inspect the detent controller, but otherwise confirmed that the Crane was in good working condition. Thereafter, White Construction Foreman Chris Burkhart

---

[2] A supplier is defined as "any person who for any purpose or in any manner gives possession of a chattel for another's use . . . [i.e.,] sellers, lessors, donors, or lenders." *Dutchmen Mfg., Inc.*, 849 N.E.2d at 521 (citation omitted).

operated and tested the Crane before formally acknowledging its delivery. Because ALL Erection did not specifically inspect the detent controller, there is a question of fact as to whether ALL Erection breached its duty of care.

However, even assuming that ALL Erection breached its duty to Carson, Carson's negligence claim nonetheless fails under the proximate cause prong of the analysis. *See Ashcraft*, 706 N.E.2d at 1103 ("To prevail on a motion for summary judgment in a negligence case, the defendant must establish that the undisputed material facts negate at least one element of the plaintiff's claim or that the claim is barred by an affirmative defense."). "A party's act is the proximate cause of an injury if it is the natural and probable consequence of the act and should have been reasonably foreseen and anticipated in light of the circumstances." *Id.* at 1105 (citation omitted). "A fundamental element of proximate cause is that the injury or consequence of the wrongful act is reasonably foreseeable at the time of the act." *Sharp v. Town of Highland,* 665 N.E.2d 610, 617–18 (Ind. Ct. App. 1996). "A general principle of negligence law is that the actor need not foresee the exact manner in which the harm occurs but must, in a general way, foresee the injurious consequences of his act or omission." *Frye v. American Painting Co.,* 642 N.E.2d 995, 998 (Ind. Ct. App. 1994).

The undisputed evidence indicates that the Crane was operated regularly by White Construction for nearly three months without any issues with the detent controller. The problem with the detent controller did not arise until September 20, 2012, the day of the incident. After the incident, the third-party inspector confirmed that an electrical problem was causing the detent controller to self-activate. According to Scholl, he "continued to travel back and forth with the machine and rotat[ed] the top of the joystick, wiggl[ed] it back and forth and [did] several different things just trying to simulate [the issue]. And [he] both got it to act up and not act up,

depending on how much [he] was messing with the top of the controller." Scholl Dep. at 14. Thereafter, ALL Erection fixed the detent controller.

Carson argues that "[w]hether [the] defect would have been discovered by the defendant had it had its qualified personnel do the testing and inspection is a question for the jury after hearing all the evidence, not something that is appropriate for judicial resolution at this summary judgment stage." Carson's Reply at 4. While in theory this is true, Carson's argument fails because nothing in the designated evidence indicates that, had ALL Erection performed an inspection of the detent controller prior to delivery, it would have discovered the electrical issue. In this regard, Carson has failed to present any evidence, expert or otherwise, suggesting that the issue with the detent controller was present or could have been present when the Crane was initially delivered to White Construction. In fact, the evidence indicates otherwise, as the Crane and the detent controller operated without malfunctioning for almost three months prior to the incident. There is simply no evidence that ALL Erection knew or should have known about the electrical issue with the detent controller. Thus, there is no evidence from which a jury could determine that ALL Erection's failure to inspect the detent controller was the proximate cause of Carson's injuries. Accordingly, ALL Erection is entitled to summary judgment.

## IV. CONCLUSION

For the reasons set forth above, the Defendant's motion for summary judgment is **GRANTED** and the Plaintiff's motion for partial summary judgment is **DENIED AS MOOT**.

SO ORDERED: 04/25/2014

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.